UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LUCINDA M. ALBRIGHT**,                                    Case Number 5:12 CV 2644

        Plaintiff,

                                                     Magistrate Judge James R. Knepp, II

        v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.                                    MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Plaintiff Lucinda M. Albright seeks judicial review of Defendant Commissioner of Social Security's decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 15). For the reasons given below, the Court affirms in part and remands in part the Commissioner's decision denying benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on October 5, 2005, and October 15, 2007, respectively. (Tr. 168, 172). Her claims were denied initially and on reconsideration. (Tr. 113, 117, 121, 147). Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 116). At the hearing, Plaintiff, represented by counsel, a medical expert (ME), and a vocational expert (VE) testified. (Tr. 862). On December 29, 2008, the ALJ concluded Plaintiff was not disabled. (Tr. 27-45). Plaintiff filed a request for review and the Appeals Council issued a decision vacating the hearing decision and remanding the case for further proceedings. (Tr. 30, 32).

A second hearing was held on September 7, 2011, before the instant ALJ where Plaintiff, represented by council, a ME, and a VE testified. (Tr. 835). On September 16, 2011, the ALJ concluded Plaintiff was not disabled. (Tr. 10). Again, Plaintiff filed a request for review. (Tr. 8). Plaintiff's request was denied, making the decision of the ALJ the final decision of the Commissioner. (Tr. 2); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 1481. On October 23, 2012, Plaintiff filed the instant case. (Doc. 1).

### FACTUAL BACKGROUND

*Plaintiff's Background, Vocational Experience, and Daily Activities*

Born June 4, 1964, Plaintiff was 40 years old on the alleged disability onset date. (Tr. 22). Plaintiff has a high school education and an associate's degree. (Tr. 297, 771, 842, 867). Previously, Plaintiff worked as a painter, cake decorator, bank teller, and maintenance company owner. (Tr. 22, 204A, 267, 293, 771, 843, 866-87).

Plaintiff averred she is unable to work due to back pain, leg pain, depression, anxiety, liver problems, and reflex sympathetic dystrophy syndrome (RSD). (Tr. 183, 292, 596). She claimed it was hard for her to drive or perform daily activities because of pain in her back and legs. She further claimed she could only stand for ten-to-fifteen minutes on a good day; and on a bad day, remained in bed. (Tr. 844-45). She also admitted she was depressed and had feelings of hopelessness and crying spells. (Tr. 849). She testified she had lost everything including her business, marriage, and ability to provide her children with a college education. (Tr. 845).

Plaintiff lived with her boyfriend but said she was moving in with her daughter very shortly. (Tr. 841, 846). Concerning daily activities, Plaintiff laid on the couch, watched television, cleaned the table, prepared dinner, talked with her family, occasionally folded the laundry, maintained personal care, occasionally loaded and unloaded the dishwasher, played

cards and games with friends, attempted to go bowling with her (now ex-) husband once per week, and occasionally shopped. (Tr. 230-33, 280, 282-83, 626, 846). She did not use an assistive device or wear a brace or splint. (Tr. 284).

*Medical Evidence*

Plaintiff sustained a tailbone injury in 1999, and underwent a coccygectomy in 2002. (Tr. 345). On May 24, 2004, an MRI of Plaintiff's lumbar spine revealed a mild disc bulge at L4-5 without significant stenosis. (Tr. 742).

On July 18, 2004, Plaintiff was hospitalized for three days due to severe back pain. (Tr. 500-02). About two months later, Plaintiff received a trigger point injection and lumbar steroid epidural; she reported doing "okay" at a follow-up visit four months later. (Tr. 565-66).

In January 2005, Plaintiff was diagnosed with hepatitis C. (Tr. 820). Over the next six-to-seven months, Plaintiff saw Argun Venkat, M.D., for treatment of this condition. (Tr. 799-823).

On June 18, 2005, Plaintiff was hospitalized for evaluation of left leg pain that radiated to her lower back. (Tr. 485-99). There, James Bressi, D.O., ordered an MRI of Plaintiff's lumbar spine, which was unremarkable. (Tr. 495, 499, 741). Dr. Bressi also ordered an electromyogram (EMG) and nerve conduction study, which were normal and provided no evidence of large fiber neuropathy or radiculopathy in either of Plaintiff's legs. (Tr. 494, 740). At discharge, Dr. Bressi noted Plaintiff's pain was greatly improved and she was neurologically intact with an improved gait. (Tr. 498).

On two occasions in May 2006, Dr. Bressi provided Plaintiff with caudal epidural steroid and trigger point injections. (Tr. 750, 752-53). Plaintiff reported "excellent" results after treatment, but said the relief subsequently wore off. (Tr. 747).

On September 12, 2006, Kim Price, L.I.S.W., assessed Plaintiff's mental capacity to undergo a spinal cord stimulator implantation. (Tr. 622-28). After considering Plaintiff's background, mental status, and allegations of pain and anxiety, Ms. Price diagnosed Plaintiff with major depressive disorder, panic disorder without agoraphobia, and history of opioid (Demerol) dependence. (Tr. 627).

On September 25, 2006, Hem Sharma, M.D., conducted a psychiatric evaluation. (Tr. 616-20). Plaintiff denied drug abuse, but Dr. Sharma questioned Plaintiff's excessive use of pain medication. (Tr. 616). Dr. Sharma indicated overuse of Tylenol caused Plaintiff's hepatitis C to flare. (Tr. 617). Plaintiff claimed her liver functions returned to normal, but Dr. Sharma expressed concern about past liver damage and Plaintiff's use of medication causing further damage. (Tr. 617, 619). Plaintiff received individual therapy and medications for a little over a month, until October 30, 2006, when she indicated a sense of mild improvement of symptoms. (Tr. 538).

On February 22, 2007, Dr. Bressi implanted a trial spinal cord stimulator. (Tr. 603-04). The record does not suggest Plaintiff received a permanent implantation.

In April 2007, Plaintiff was hospitalized for opiate dependence, depression, and suicidal ideation. (Tr. 632-35). Todd Ivan, M.D., noted Plaintiff was taking a number of pain pills for chronic mechanical back pain and was inappropriately using Duragesic patches. (Tr. 632-34). Plaintiff's cognition was intact and she was directed to take Tylenol for pain rather than opiate medication or Ultram due to potentially harmful drug interaction. (Tr. 633).

Plaintiff returned to the emergency room on June 24, 2007, requesting a shot to relieve leg pain. (Tr. 630-31). Plaintiff did not present any new neurologic syndromes on exam. (Tr.

630). The treatment provider found Plaintiff had "exacerbate[ed]" her chronic pain and prescribed pain medication. (Tr. 630).

On September 18, 2007, Dr. Ivan opined Plaintiff would have difficulty with most work-related tasks. (Tr. 606-07). He concluded Plaintiff suffered from depression and chronic leg and back pain. (Tr. 607). He noted Plaintiff could not stand for long periods of time and was not employable. (Tr. 607).

On October 5, 2007, Plaintiff saw Robert Geiger, M.D., and Steve Collier, NP-C, for pain management services, complaining of lower back and left lower extremity pain. (Tr. 589). Plaintiff admitted she had treated in a drug detoxification program but dropped out due to cost. Plaintiff declined to provide further information regarding treatment. (Tr. 589-90). Plaintiff said her quality of life improved when she took medication because she was able to perform daily activities. (Tr. 590). On examination, Plaintiff's lumbar spine was mildly tender to palpation, negative for swelling, and positive for mild paraspinal musculature spasm with radiation to the subscapular region. (Tr. 590). In her lower left extremity, Plaintiff had mild pain on palpation but no swelling or atrophy and her strength was 5/5. (Tr. 590). Plaintiff walked with a normal, steady gait but exhibited a bizarre affect. (Tr. 592). Although Plaintiff said she could not walk due to pain, she walked out of the office without difficulty at the end of the visit. (Tr. 589). Plaintiff was prescribed Gabapentin and Duragesic. (Tr. 590).

On November 26, 2007, Steven Smith, M.D., increased Plaintiff's Duragesic dosage and added Wellbutrin to her regimen in response to complaints of unrelieved left leg pain. (Tr. 588).

In January 2008, Dr. Bressi provided Plaintiff with three caudal epidural injections. (Tr. 572, 577, 586). On March 19, 2008, Plaintiff followed up with Dr. Bressi. (Tr. 569-71). Plaintiff

contended her pain level had increased in the last several weeks due to an increase in overall level of activity. (Tr. 569). However, she said her quality of life improved with pain medication and she was able to complete her daily activities. (Tr. 570). Dr. Bressi prescribed Oxycodone and Toradol. (Tr. 571).

On October 10, 2008, Plaintiff said her overall pain was moderately well controlled. (Tr. 416). On exam, Plaintiff was positive for mild lumbar paraspinal muscular spasm without radiation, exhibited a negative straight leg raise test without radicular pain, and had 5/5 strength without atrophy. (Tr. 416-17). She rose from a seated position with mild difficulty and walked with a relatively normal, steady gait. (Tr. 417).

About three months later, Plaintiff underwent a comprehensive vocational evaluation analysis. (Tr. 192-22). The evaluator concluded Plaintiff could occasionally reach; frequently handle; constantly finger, feel, talk, and hear; never be near extreme cold, heat, or moving mechanical parts; and never climb, balance, stoop, kneel, crouch, or crawl. (Tr. 195-96). Plaintiff would not be able to return to her past work or be competitively employed. (Tr. 198).

On October 1, 2009, Charles Durner, D.O., performed a psychiatric evaluation. (Tr. 533-34). Plaintiff said she was going through a difficult divorce and dealing with chronic pain, anxiety attacks, and insomnia. (Tr. 533). Plaintiff's cognitive ability was intact on examination. (Tr. 534). Dr. Durner diagnosed panic disorder without agoraphobia and prescribed Ativan for anxiety. (Tr. 534).

On June 17, 2011, Plaintiff was treated by Joseph Burick, D.O., for severe back pain. (Tr. 304). During her visit, Plaintiff was doubled over in pain but exhibited good motor and sensory function in her upper and lower extremities. (Tr. 304). Dr. Burick diagnosed degeneration of the

6

intervertebral disc and hepatitis C. (Tr. 305).

Plaintiff followed-up with Dr. Burick on July 7, 2011, and exhibited good motor and sensory functions in all extremities, a normal gait, and ability to stand up quickly without aid. (Tr. 302). Dr. Burick noted Plaintiff's pain appeared to be out of proportion compared to her physical exam results. (Tr. 302). A June 30, 2011, lumbar spine x-ray revealed no acute osseous abnormality. (Tr. 301).

*State Agency Review*

On June 28, 2005, Willa Caldwell, M.D., reviewed Plaintiff's file and determined she could engage in light work except she would require a periodic sit/stand option. (Tr. 539-46). Dr. Caldwell evaluated Plaintiff again on February 8, 2010, and opined that Plaintiff could engage in light work but could only sit for six hours in a workday and required sit/stand option. (Tr. 352-60).

On October 10, 2006, Raj Tripathi, M.D., opined Plaintiff would be able to perform work at a medium exertional level. (Tr. 636-43).

Last, on December 5, 2009, Bonnie Katz, Ph.D., opined Plaintiff's mental impairments were not severe. (Tr. 340)

*Consultative Examinations*

Paul Scheatzle, D.O., evaluated Plaintiff on May 23, 2005. (Tr. 547-54). At the time, Plaintiff received pain management services, including epidural injections and medication, and was in an RSD support group. (Tr. 547). On examination, Plaintiff exhibited a "great deal" of grimacing, frequently shifted positions, displayed a slightly dorsolumbar flexed posture that leaned to the right, and had a mildly antalgic gait. (Tr. 548). Plaintiff complained of dysesthetic

pain throughout her left leg, but her light touch sensation was otherwise intact. (Tr. 548). Her muscle stretch reflexes and muscle strength were intact and she had normal muscle tone without atrophy. (Tr. 548-49, 551). Plaintiff did not exhibit guarding of her lumbar paraspinal muscles and had good intersegmental movement of her lumbar spine. (Tr. 549). Plaintiff had decreased range of motion of her dorsolumbar spine and hips, which was worse on the left side. (Tr. 549, 553-54). There were no polyarthritic changes or instability in her joints. (Tr. 549). Dr. Scheatzle diagnosed mild disc bulge at L4-5 and a history of coccygeal resection with the subsequent development of chronic regional pain syndrome down her left leg. (Tr. 549). Dr. Scheatzle opined that in a typical workday, Plaintiff could stand for two hours and sit for four hours in a good ergonomic chair and would need to change positions every fifteen minutes. (Tr. 549). Additionally, he opined Plaintiff could walk in 150 foot intervals and lift twenty pounds occasionally and ten pounds frequently. (Tr. 549).

On December 27, 2005, Yolanda Duncan, M.D., noted an unremarkable physical examination. (Tr. 788-89, 791-94). Dr. Duncan opined Plaintiff's lumbar spine x-ray revealed mild discogenic degeneration at L3-4 and L4-5 but no fracture, subluxation, or destructive lesion. (Tr. 790). Dr. Duncan concluded Plaintiff would have no difficulty with physical work and was able to be gainfully employed despite having trouble lifting and carrying. (Tr. 789).

On March 21, 2006, Gary Sipps, Ph.D., performed a psychological evaluation of Plaintiff. (Tr. 770-76). Plaintiff complained of constant depression, a lack of energy, and crying spells but reported no current psychological treatment. (Tr. 772). He diagnosed depressive disorder and noted Plaintiff's mental capacity was either mildly impaired or unimpaired in all areas. (Tr. 774-75).

On December 22, 2009, Paul Nielsen, M.D., performed a consultative examination but indicated it was difficult to examine Plaintiff because she was "writhing" in pain. (Tr. 346). Dr. Nielson indicated Plaintiff had bilateral decreased strength in her arms, most notably in her shoulders, and normal range of motion in her cervical spine, shoulders, elbow, writs, and hands. (Tr. 346). He noted Plaintiff could not touch her toes but was able to get off the examination table by herself. (Tr. 346). Dr. Nielson described Plaintiff as "very sickly" and someone who had been in chronic pain management for the past ten years. (Tr. 346). He concluded Plaintiff could walk twenty feet, stand for ten minutes, sit for twenty minutes without discomfort, and lift twenty pounds. (Tr. 345, 347).

## ME Testimony

Thomas Scott, M.D., a board certified orthopedic surgeon, provided ME testimony at Plaintiff's 2011 hearing. (Tr. 78-80, 850-55). Dr. Scott testified that Plaintiff's impairments included chronic low back pain, left-sided sciatica, history of fracture to her coccyx and tailbone, and history of hepatitis C with liver disease. (Tr. 851). Dr. Scott opined Plaintiff's condition did not meet or medically equal the listings. (Tr. 852). Dr. Scott reported Plaintiff could occasionally stoop and lift twenty pounds; frequently lift ten pounds; stand, walk, or sit for less than six hours; and required a sit/stand option. (Tr. 853, 855). Dr. Scott said Plaintiff's condition would produce good and bad days. (Tr. 854). Dr. Scott indicated Plaintiff could not perform the activities identified in his medical source statement on a bad day; and, it would not be illogical to suggest she could have two-to-four bad days per month. (Tr. 854-55).

## VE Testimony

At the hearing held September 7, 2011, the ALJ asked the VE whether a younger person with a high school education and Plaintiff's work history, who could perform light work but

could not climb ladders, ropes, or scaffolds; could occasionally stoop, kneel, crouch, or crawl; could understand, remember, and carry out simple instructions and perform simple routine tasks; must avoid strict quotas and higher-than-average production demands; and could tolerate superficial contact with the public and occasional interaction with coworkers, could find work in the national economy. The VE testified such a person could work as a hand painter, mail clerk, or housekeeping cleaner. (Tr. 858-59).

Next, the ALJ asked the VE whether the person described above, but with the added requirement that such a person could not sit for more than four hours in a workday and must be permitted to alternate between sitting and standing at will, could find work in the national economy. The VE testified that such a person could not find work. (Tr. 859).

*ALJ Decision*

The ALJ determined Plaintiff suffered from severe impairments including degenerative disc disease of the lumbar spine, status post coccygectomy with chronic pain, and major depressive disorder. (Tr. 15).

Next, the ALJ found Plaintiff had the RFC to perform light work, except she could not climb ladders, ropes, or scaffolds; could only occasionally stoop, kneel, crouch, or crawl; could not sit for more than four hours during the course of the workday; could understand, remember, and carry out simple instructions and perform simple, routine tasks; must avoid strict quotas or higher than average production demands; and could tolerate superficial contact with the public and occasional interaction with co-workers. (Tr. 18).

Considering Plaintiff's age, education, work experience, RFC, and VE testimony, the ALJ determined Plaintiff could work as a hand painter, mail clerk, and housekeeping cleaner. (Tr. 23). Thus, the ALJ determined Plaintiff was not disabled. (Tr. 23).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1.  Was the claimant engaged in a substantial gainful activity?

2.  Did the claimant have a medically determinable impairment, or a combination

> of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?
>
> 3.  Does the severe impairment meet one of the listed impairments?
>
> 4.  What is claimant's RFC and can she perform past relevant work?
>
> 5.  Can the claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in steps one through four. *Walters*, 127 F.3d at 529. The burden then shifts to the Commissioner at step five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* A claimant is only determined to be disabled if she satisfies each element of the analysis, including inability to do other work, and meets the duration requirements. 20 C.F.R. §§ 404.1520(b)-(f); 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff claims the ALJ did not: 1) afford adequate weight to Plaintiff's subjective, consistent complaints of pain; or 2) meet his burden at Step Five. (Docs. 16, 18). Plaintiff's arguments are addressed in turn.

***Pain and Credibility***

The Sixth Circuit recognizes that pain alone may be disabling. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, an ALJ is not required to accept a claimant's own testimony regarding her pain. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. §

12

404.1529; *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186. For pain or other subjective complaints to be considered disabling, there must be: 1) objective medical evidence of an underlying medical condition; and 2) objective medical evidence that confirms the severity of the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). This standard does not require "objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

A plaintiff's failure to meet the above-stated standard does not necessarily end the inquiry. Rather, "in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability." *Swain v. Comm. of Soc. Sec.*, 297 F. Supp. 2d 986, 989 (N.D. Ohio 2003) (citing SSR 96-7p).

The ALJ is to consider certain factors in determining whether a claimant has disabling pain: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication to relieve pain; and 6) any measures used to relieve pain. 20 C.F.R. § 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3. An ALJ is not required, however, to discuss each factor in every case. *See Bowman v. Chater*, 1997 WL 764419, at *4 (6th Cir. 1997); *Caley v. Astrue*, 2012 WL 1970250, at *13 (N.D. Ohio 2012).

Further, an "ALJ is not required to accept a claimant's subjective complaints" and may "consider the credibility of a claimant when making a determination of disability." *Jones*, 336

13

F.3d at 476. An ALJ's credibility determinations about the claimant are to be accorded "great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' However, they must also be supported by substantial evidence." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Walters*, 127 F.3d at 531); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("we accord great deference to [the ALJ's] credibility determination."). "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Rogers*, 486 F.3d at 248.

Here, Plaintiff claimed she was unable to work due to continuing, persistent pain which made it hard for her to drive and perform daily activities. She stated she could only stand for ten-to-fifteen minutes on a good day, and on a bad day, would remain in bed. (Tr. 844-45). She also claimed she felt depressed and had feelings of hopelessness and crying spells. (Tr. 849). The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they conflicted with the RFC. (Tr. 19).

The ALJ relied on several factors to find Plaintiff's allegations inconsistent with the record as a whole; including activities of daily living, diagnostic evidence, opinion evidence, ME testimony, and measures used to relieve pain. (Tr. 16-22). For the reasons articulated by the ALJ, his credibility determination is supported by substantial evidence.

First, concerning activities of daily living, the ALJ determined Plaintiff had only mild limitations and noted she did not reside in a highly supportive living arrangement. She was able

to prepare simple meals, fold clothes, load and unload the dishwasher, go shopping, go bowling with her husband, play cards, and go out in the public alone. (Tr. 17, *referring to*, Tr. 230-33, 280, 283-83, 626, 846).

Next, regarding diagnostic evidence, the ALJ pointed to a 2004 lumbar MRI which revealed a mild disc bulge at L4-5 without any significant stenosis, a 2005 MRI which was unremarkable, and normal EMG and nerve conduction studies. (Tr. 19, *referring to*, Tr. 494-95, 499, 740-42). Further, the ALJ discussed a 2005 x-ray which revealed only mild discogenic degeneration at L3-4 and L4-5. (Tr. 20, *referring to*, Tr. 790). The ALJ also considered more recent diagnostic studies, including a 2011 x-ray of the lumbar spine which revealed mild levoscoliosis and some degenerative changes without the presence acute osseous abnormality. (Tr. 20, *referring to*, Tr. 301).

Concerning opinion evidence, the ALJ discussed Dr. Burick's treatment history, which included documentation of a normal gait, and ability to get out of a chair quickly without assistance. (Tr. 20, *referring to*, Tr. 302). Dr. Burick also indicated Plaintiff's reports of pain seemed out of proportion to the physical examination findings. (*Id.*). Next, the ALJ afforded significant weight to the opinion of Dr. Scheatzle, who observed only a mildly antalgic gait, normal muscle tone and strength, intact light touch sensation in her left leg, and no polyarthritic changes or instability in joints, despite a "great deal" of grimacing on examination. (Tr. 20, *referring to*, Tr. 547-549, 551-54).

The ALJ also gave significant weight to the opinion of medical examiner Dr. Scott, who concluded Plaintiff would need to avoid prolonged sitting and could occasionally stoop and lift twenty pounds and walk for six hours during the course of the day. (Tr. 20-21, *referring to*, Tr.

853). The ALJ noted Dr. Scott is a board certified orthopedic surgeon, and therefore the claimant's back impairments were within his area of expertise. (Tr. 21).

The ALJ also considered measures to relieve pain. First, he noted Plaintiff received pain medication management but continued to report pain. (Tr. 19, *referring to*, Tr. 588, 590). He indicated that despite the fact Plaintiff underwent an operation for a spinal cord stimulator trial, she never received permanent implantation. (Tr. 19*, referring to*, Tr. 603-04). Also, despite receiving three epidural injections in January 2008, Plaintiff continued to report that pain was not adequately controlled and she had problems walking. (Tr. 19, *referring to*, Tr. 565-66, 750, 752-53).

Thus, Plaintiff's complaints are inconsistent with the record as a whole for the reasons stated by the ALJ. *Rogers*, 486 F.3d at 248. Therefore, the ALJ's pain and credibility determination is supported by substantial evidence.

### Step Five

To meet his burden at Step Five, the Commissioner must make a finding "'supported by substantial evidence that claimant has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id*. If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010); *see also Webb v. Comm'r of Soc. Sec*., 368 F.3d 629, 633 (6th Cir. 2004) (explaining that although an ALJ need not list a

claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do"). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Here, Plaintiff argues the VE should have relied on the hypothetical which included a sit/stand restriction and limited Plaintiff to sitting for no more than four hours per workday (*i.e.*, wholly adopt Dr. Scheatzle's opinion). (Docs. 16, at 12-13; 18, at 1-3). However, the fact that the ALJ gave significant weight to Dr. Scheatlze's opinion without adopting it verbatim does not automatically indicate the ALJ's RFC, and subsequent Step Five determination, is not supported by substantial evidence. Indeed, there is a difference between medical opinions and an RFC finding. The ALJ, not a medical source, is tasked with making the latter determination. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."). The two assessments are not synonymous, and need not be identical to be compatible. SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the [RFC] assessment."). Therefore, the ALJ is only required to incorporate into the RFC those portions of Dr. Scheatzle's opinion which he finds credible.

Although the ALJ was not required to wholly incorporate Dr. Scheatzle's opinion, he nevertheless failed to support his Step Five finding with substantial evidence. To this end, the

ALJ found Plaintiff could not sit for more than four hours. (Tr. 18). Then, the ALJ relied on VE testimony that did not contemplate any type of restriction on sitting or standing. (Tr. 858-59). In other words, the ALJ's RFC determination is more restrictive than the hypothetical posed at the hearing because it included a restriction on sitting, whereas the hypothetical did not. Therefore, the controlling hypothetical does not accurately portray the claimant's limitations (as set forth by the RFC) and the ALJ's determination at Step Five is not supported by substantial evidence.

To the extent the Commissioner argues testimony from the 2008 hearing amounts to substantial evidence, this argument is not well taken for several reasons. First, it is unclear whether the ALJ is justified in relying on testimony from a vacated hearing; neither party presented the Court with law or argument on the issue. Regardless, the Court seriously questions the relevance of testimony regarding the number of jobs available in 2008, as opposed to 2011. Further, the 2008 and 2011 testimony is inconsistent. Indeed, when asked about a claimant who required a sit/stand option and was limited to sitting more than four hours, the VE opined no work would be available; however, the VE opined in 2008 that work was available for such a person. (Tr. 859, 891-94). Furthermore, the 2008 hypothetical still does not accurately portray Plaintiff's limitations because Plaintiff's RFC does not include a sit/stand option, whereas the 2008 hypotheticals did. (Tr. 891-94). For any and all of these reasons, the 2008 testimony cannot serve as substantial evidence to support the ALJ's Step Five determination.

To be clear, the ALJ was under no obligation to transcribe all of Dr. Scheatzle's opinions into Plaintiff's RFC assessment. However, because the ALJ relied on a hypothetical that did not accurately portray Plaintiff's limitations, this case is remanded for further analysis.

18

CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's credibility determination is supported by substantial evidence. However, because the Commissioner did not support his determination at Step Five with substantial evidence, the case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further analysis consistent with this opinion.

IT IS SO ORDERED.

s/James R. Knepp II
United States Magistrate Judge